## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT IUFFUES WEBB JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20 C 5828 |
| | ) | |
| JEAN M. FILLIPITCH, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant Jean M. Fillipitch's Motion for Summary Judgment. For the reasons that follow, the motion is granted.

## BACKGROUND

In this action brought under 42 U.S.C. §§ 1981 and 1983, Plaintiff Robert Webb alleges he was discriminated against because of his race when Defendant Jean Fillipitch, a circuit court law librarian, submitted a request for investigation to the Attorney Registration and Disciplinary Committee ("ARDC") in relation to the suspected unauthorized practice of law by Webb. Fillipitch now moves for summary judgment in her favor of all remaining counts of the amended complaint.

### I.    Local Rule 56.1

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019).

The rule requires the moving party to file a statement of facts that demonstrates its entitlement to judgment as a matter of law. *Petty v. City of Chi.*, 754 F.3d 416, 420 (7th Cir. 2014); LR 56.1(a)(2). The nonmoving party must file a response to that statement and may provide a separate statement of additional facts. *Petty*, 754 F.3d at 420; LR 56.1(b)(2)–(3). Both statements of facts and statements of additional facts must consist of concise numbered paragraphs, supported by citations to specific pages in the evidentiary record. *See* LR 56.1(d)(1)–(2).

If the responding party disagrees with the other party's fact, it must cite specific parts of the record disputing the fact and "concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). Failure to properly controvert a fact supported by admissible evidence results in its admission. *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); LR 56.1(e)(3). Facts that a party raises in a Local Rule 56.1 response that do not controvert the asserted fact, and that are not included in the party's statement of additional facts, are stricken. The Court also disregards legal arguments in the statement of facts and does not consider statements unsupported by admissible evidence. *See Cady v. Sheahan*, 467 F.3d 1057, 1060–61 (7th Cir. 2006). "The purpose of the 56.1 statement is to identify for the Court the evidence supporting a party's factual assertions in an organized manner[;] it is not intended as a forum for factual or legal argument." *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000).

The Local Rules are not mere technicalities, and district courts are entitled to expect strict compliance with Local Rule 56.1.

In this case, Webb did not file his own Local Rule 56.1(b)(3) statement of additional material facts and, in responding to Fillipitch's Local Rule 56.1 statement, fails to properly dispute the majority of Fillipitch's statements of fact. Webb rarely disputes a specific fact; instead, he groups together several paragraphs of Fillipitch's statement of facts and objects to them as a whole, often with multiple, lengthy paragraphs. We address his objections below.

With respect to paragraphs 9–16, Webb's only response is that the facts do not point to any admissible evidence capable of disproving his claims. This is not a proper denial and the facts set forth in paragraphs 9–16, to the extent they are supported by admissible evidence, are deemed admitted.

With respect to paragraphs 17–23, Webb argues those paragraphs are not supported by admissible evidence but does not state which evidence is inadmissible and why. Webb's additional responses do not contradict any of these facts. Paragraphs 17–23 are deemed admitted.

Webb responds to paragraphs 24–51 with a single block objection. Webb states that the information in those paragraphs does not point to any admissible evidence capable of disproving any of his claims. Again, he does not state what evidence is inadmissible and why. Webb also asserts that the incidents described merely represent past patterns and practices of "unconstitutional and selective discriminatory conduct on

the part of defendant Fillipitch toward the SCPAAC Research Study Group's programmatic activities in the Will County Courthouse Law Library, in general, and toward plaintiff Webb, in particular." Dkt. # 98, at 4. This response is improper. None of Webb's arguments and additional facts properly refute the facts laid out by Fillipitch. Consequently, the facts set forth in paragraphs 24–51 that are supported by admissible evidence are deemed admitted.

Webb responds to paragraphs 52–58 with another block objection. He argues the facts are inadmissible because they are not corroborated by any sworn affidavit and/or deposition testimony from the Circuit Court judge who provided Fillipitch with a copy of the flyer. Webb further contends that because no audio or video evidence was turned over, Fillipitch's statement in paragraph 52 is inadmissible. It is not; it was based on her own personal knowledge. And if Webb believed evidence was not produced or wanted corroboration from the judge, the time for that was during the discovery phase. Webb additionally states, without explaining, that his deposition testimony cited in support of paragraph 58 is mischaracterized. The facts set forth in paragraphs 52–58 are deemed admitted.

Webb responds to paragraphs 61–80 with another block objection, consisting of eight lengthy paragraphs. Webb denies paragraph 62 which states he sought payment for legal assistance. Webb says he sought the assistance of the court to hold a woman bound to a verbal agreement with Webb that she would share at least 10% of all monies she obtained from any settlement of her sexual harassment claim "in exchange for

showing her how he became personally knowledgeable of how to properly access the federal judiciary." Dkt. # 98, at 5–6. Webb also makes a specific hearsay objection to paragraph 63, which we will address separately below. Paragraphs 61–80 are deemed admitted.

Finally, Webb's contention that the Court should not credit Fillipitch's statements in her declaration because they contradict the lack of knowledge asserted in certain paragraphs of her answer to the amended complaint, lacks merit. As Fillipitch aptly notes, Webb's argument "fails to account for the reality that a party's knowledge grows over the course of a lawsuit, as issues and events are investigated and information is exchanged between parties." Dkt. # 103, at 11. More importantly, however, none of the cited "lack of knowledge" answers by Fillipitch contradict statements in her discovery responses or declaration.

## II.    Factual Background

In resolving a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The following admissible facts are taken from the record and are undisputed unless otherwise noted.

Fillipitch is the law librarian for the Circuit Court of the Twelfth Judicial Circuit in Will County, Illinois (the "Circuit Court"), and has been in that position since March 2015. Webb is a long-time, regular patron of the law library at the Will County courthouse and has been going to the law library one or more times per week for more

5

than 20 years. Webb is not an attorney and is not licensed to practice law. He is the chief legal research coordinator for the Steering Committee for the Pan-African Alliance and Collective ("SCPAAC").

In 2014, the Chief Judge of the Circuit Court directed the then-current law librarian to begin removing books from the law library and to replace them with online legal resources. When Fillipitch took over the position of law librarian in March 2015, she continued the book removal project at the direction of the Chief Judge. Webb believed the book removal was being done to discriminate against him based on his ethnicity and nationality.

In August 2016, the Circuit Court began participating in a JusticeCorps program in connection with the Illinois Supreme Court's Access to Justice initiative. The JusticeCorps program places volunteers in courthouses who are trained to provide legal information and procedural guidance for self-represented litigants, as well as connect those litigants with legal aid services and self-help resources.

Webb believed he was harmed by the JusticeCorps program because once that program was launched, staff from the Circuit Clerk's Office began directing self-represented litigants directly to JusticeCorps interns for assistance, which thereby reduced the opportunities for Webb to assist those persons. At that time, Webb believed the program was launched to discriminate against him based on his race.

In October 2017, IT staff from the Circuit Clerk's Office came to the law library and disabled the USB ports on the public computer terminals. Fillipitch did not make

the decision to disable the USB ports, nor did she have any input in that decision, but Webb believed this was done to discriminate against him because of his race.

In late 2017 or early 2018, Webb gave Fillipitch a copy of the SCPAAC's flyer and asked her to post it on the bulletin board in the law library. The flyer is a two-sided document. The front side encourages people to contact the SCPAAC if they "require help with how to correctly write, file and serve" various legal documents. Dkt. # 86-7. The back of the flyer provides information about the SCPAAC. Fillipitch accepted the flyer from Webb and read it, but never posted it in the law library. Webb believed that Fillipitch was discriminating against him based on his race when she refused his request to post the flyer.

Until late 2017 or early 2018, law library patrons were given free access to office supplies, such as pens, markers, white-out, envelopes, paper clips, and memory sticks. In late 2017 or early 2018, Fillipitch posted signs indicating that law library patrons were no longer allowed to help themselves to the office supplies. Webb believed that Fillipitch was discriminating against him when she stopped giving law library patrons access to free office supplies.

Until June 2018, the chairs at the public computer terminals in the law library had wheels or coasters and it was common for Webb to roll in the chairs back and forth between the computer terminals and the bookshelves. Fillipitch believed that Webb's conduct was dangerous and posed a safety risk because Webb frequently rolled in the chair at a rapid rate, and the path in which Webb rolled himself crossed the main

walkway in the law library.  On multiple occasions, Fillipitch asked Webb not to do this, but he did not comply.

On June 27, 2018, Webb was sitting in a chair, watching a video at one of the computer terminals in the law library, when he rolled himself over to the bookshelves and then back to the computer.  Fillipitch told Webb to stop.  One of Fillipitch's assistants then called courthouse security to have Webb removed from the law library. The security officers arrived and told Webb that he had to leave the law library, or he would be arrested. Webb complied and left the law library.

When he was forced to leave the law library, Webb believed that Fillipitch was violating his civil rights and discriminating against him based on his race and/or ethnicity and national origin, because he had done nothing wrong and because he had seen a white attorney roll on the chair between the computer and bookshelves without being rebuked by Fillipitch.

Fillipitch never used racist language toward Webb.

On September 12, 2018, a Circuit Court judge came to the law library and handed Fillipitch a copy of the front side of the SCPAAC flyer, the side which offers to provide help with writing, filing, and serving court motions, unemployment appeals, complaints, and appellate briefs.  The flyer also states that persons needing such services should call Webb's phone number.

Earlier that day, Fillipitch observed Webb helping a man type some kind of petition or court filing in the law library.  Webb denies he was doing any typing.  The

man whom Webb was helping was Charles Jackson, who claimed he was owed money from another person. Webb told Jackson that his claims were called unjust enrichment and breach of implied contract, and Webb showed Jackson a sample pleading which Jackson used to prepare his own complaint.

A few months earlier, in or about May 2018, Fillipitch attended a seminar where a representative of the ARDC, Scott Kozlov, made a presentation in which he explained that the unauthorized practice of law was a problem, described activities constituting the unauthorized practice of law, and asked law library staff to look out for and report any such suspected activity. Based on the seminar presentation, her observations of Webb that day and on previous occasions in the law library, and her conversation with the judge who handed her the SCPAAC flyer, Fillipitch downloaded a "Request for Investigation" form from the ARDC website. She completed the form and typed a narrative.

When Fillipitch was preparing the request for investigation, she knew that Webb was not an attorney, that he was associated with the SCPAAC, and that he regularly met with other self-represented litigants in the law library. While Fillipitch could not say exactly what Webb was working on with any of those individuals, it appeared to her that they were working on specific matters, and not simply browsing various legal resources or reading for pleasure.

Fillipitch also knew that Webb had filed a lawsuit in the Circuit Court in 2016, in which he alleged, among other things, that the defendant was obligated to

"compensate plaintiff Webb for the amount of time and energy which he contributed toward the legal research and technical writing to commence and defend" an employment discrimination claim in federal court. Dkt. # 86-9, at 10.

Fillipitch also knew that she had previously spoken with one of the JusticeCorps coordinators, who told Fillipitch that in or around January 2018, one or two interns reported seeing Webb receiving money outside the courthouse from a person that he had been helping in the law library.[1]

Fillipitch then faxed the Request for Investigation form to the ARDC, attaching her typed narrative, the copy of the flyer that she had received from the judge, and six pages from the 11-page 2016 complaint that Webb had filed in the Circuit Court.

Upon receipt of Fillipitch's report, the ARDC initiated a confidential investigation of Webb. As part of the investigation, Webb went to the ARDC office in Chicago and answered questions under oath. During that questioning, the ARDC counsel told Webb that the SCPAAC flyer was concerning because the flyer implies that Webb is offering to provide legal services, including the preparation of legal documents.

On November 1, 2019, the ARDC concluded its investigation and issued a letter to Webb. The ARDC letter indicated that the SCPAAC flyer appeared to be an offer to

---

[1] Webb makes a hearsay objection to this fact. The interns' reports and the JusticeCorps coordinator's statement to Fillipitch about those reports are clearly out-of-court statements, but Fillipitch's declaration about those statements is not offered to prove that Webb accepted money from anyone. Rather, the declaration is only offered to show Fillipitch's state of mind when she prepared the narrative portion of the request for investigation.

provide legal services, and that Webb's conduct was concerning because his activities appeared to violate Illinois Supreme Court Rule 779 and the Attorney Act, 705 ILCS 205/1, *et seq*. The letter further indicated that the ARDC decided not to file a formal case against Webb, but warned Webb the decision against further action did not mean that the ARDC condoned any of Webb's conduct.

Fillipitch is not aware of any non-attorney besides Webb who has provided or attempted to provide legal services for other persons in the law library.

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). In determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility

11

of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (cleaned up). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff, *Anderson*, 477 U.S. at 252.

## DISCUSSION

Counts I and II of Webb's amended complaint are brought under 42 U.S.C. § 1981; however, because Section 1981 provides no private right of action against a state actor, we construe these claims as brought under Section 1983. *See Campbell v. Forest Pres. Dist.*, 752 F.3d 665, 671 (7th Cir. 2014) ("[Section] 1983 remains the exclusive remedy for violations of [Section] 1981 by state actors."). Webb also asserts a standalone Section 1983 claim in Count V that Fillipitch violated his rights under the Fourteenth Amendment's Equal Protection Clause.

Webb's claims are extremely convoluted. At the outset, we note that Webb does not argue that any of the pre-September 2018 events (i.e., the removal of books from the law library, the launch of the JusticeCorps program, the disabling of the USB ports on library computers, the refusal to post the SCPAAC flier on the library bulletin board,

12

the termination of access to free office supplies, and the expulsion of Webb from the library) form an independent basis for liability. He instead confirms that "[t]he cited events merely represent various overt acts leading up to the deprivation of rights" that allegedly occurred on September 12, 2018. Dkt. # 99, at 16. Thus, for purposes of our summary judgment analysis, the sole allegedly discriminatory act that forms the basis for liability in each of Webb's claims is Fillipitch's reporting Webb to the ARDC on September 12, 2018.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). A Section 1981 claim is established when a plaintiff shows (1) he is a member of a racial minority; (2) the defendant had an *intent* to discriminate on the basis of race; and (3) the discrimination involved one of the activities enumerated in the statute. *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

The Equal Protection Clause grants all Americans "the right to be free from invidious discrimination in statutory classifications and other governmental activity." *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 799 (7th Cir. 2015). To show a violation of the Equal Protection Clause, a plaintiff must prove that the defendant's

actions had a discriminatory effect and were "motivated by a discriminatory purpose," i.e., an *intent* to discriminate. *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). To show discriminatory effect, plaintiffs must show "that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that [they] were treated differently from members of the unprotected class." *Id.* at 635.

So, while Section 1981 and the Equal Protection Clause proscribe different types of discrimination, both claims require a finding of *intentional* discrimination. This is where Webb's claims fail.

The undisputed evidence shows that Fillipitch made her report to the ARDC after a judge came to the law library and gave her a one-sided copy of the flyer that Webb asked Fillipitch to post in the law library in late 2017. That side of the flyer encourages self-represented litigants to contact the SCPAAC if they "require help with how to correctly write, file and serve" various legal documents, including complaints, motions, and appellate briefs. Dkt. # 86-7. Earlier that day, Fillipitch saw Webb helping a man type what appeared to be some sort of petition or court filing in the law library.

At the time she submitted her request for investigation, Fillipitch also knew that Webb was not an attorney, that he was associated with the SCPAAC, and that she had observed Webb working with other self-represented litigants in the law library on a regular basis. While she could not say exactly what Webb worked on with those individuals, it appeared to Fillipitch that they were working on specific matters and not

14

simply browsing various legal resources or reading for leisure purposes. Additionally, Fillipitch was aware that JusticeCorps interns had reported seeing Webb accept money from someone he had been helping in the law library. And Fillipitch knew that Webb had previously filed a lawsuit in the Circuit Court in which he alleged, among other things, that the defendant was obligated to "compensate plaintiff Webb for the amount of time and energy which he contributed toward the legal research and technical writing to commence and defend" an employment discrimination claim in federal court. Dkt. # 86-9, at 10.

Furthermore, earlier that year, Fillipitch attended an ARDC presentation on the unauthorized practice of law, in which an ARDC attorney described activities constituting the unauthorized practice of law and asked law library staff to look out for and report any such suspected activity.

All of these facts are undisputed. The question is not, as Webb frames it, whether Webb was actually engaging in the unauthorized practice of law. The question is whether Fillipitch intentionally discriminated against Webb when she reported him to the ARDC. Webb simply has not pointed to a single fact that would support the inference that Fillipitch acted with a discriminatory motive.

Webb never heard Fillipitch make any discriminatory comments. Webb has not identified a similarly situated individual outside of his protected class that was treated more favorably. To the extent Webb is attempting to use the pre-September 2018 events as evidence of discrimination by Fillipitch, that attempt fails. Webb believes these

events (i.e., the removal of books from the law library, the launch of the JusticeCorps program, the disabling of the USB ports on library computers, the refusal to post the SCPAAC flier on the library bulletin board, the termination of access to free office supplies, and the expulsion of Webb from the library) were acts of discrimination against him because of his race, but points to no evidence that supports his conclusory statements. "Conclusory statements, not grounded in specific facts" cannot defeat a motion for summary judgment. *Bordelon v. Bd. of Educ. of the City of Chi.*, 811 F.3d 984, 989 (7th Cir. 2016) (cleaned up).

Ultimately, Webb's belief that he was discriminated against is just that—his belief. While the Court is required to draw all reasonable inferences in Webb's favor, his conclusion about the motivation behind Fillipitch's reporting is not a reasonable one to draw. *See Lewis v. Washington*, 183 F. App'x 553, 554 (7th Cir. 2006) ("the district court is never required to accept *unreasonable* factual inferences") (emphasis in original); *see also REXA, Inc. v. Chester*, 42 F.4th 652, 665 (7th Cir. 2022) ("Simply put, these inferences are barely 'conceivable' and certainly not 'reasonable,' so they will not be drawn at summary judgment."); *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021) (a "conceivable" inference is not "necessarily reasonable at summary judgment.").

"While we liberally construe the pleadings of individuals who proceed pro se, neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir.

2016) (cleaned up). Based on the undisputed facts and drawing all inferences in Webb's favor as the nonmovant, the Court concludes that no reasonable jury could find that Fillipitch intentionally discriminated against Webb because of his race. Fillipitch is entitled to summary judgment on Webb's claims against her.[2]

## CONCLUSION

For the foregoing reasons, Fillipitch's motion for summary judgment is granted. Judgment shall enter in favor of Fillipitch on each of Webb's remaining claims. Civil case terminated.

It is so ordered.

Dated: 12/01/23

Charles P. Kocoras
United States District Judge

---

[2] Fillipitch also contends that Webb's claims are akin to a malicious prosecution claim. She argues that she had probable cause to report Webb to the ARDC, which acts as a complete bar to such a claim. In evaluating whether Fillipitch had probable cause, the question is not whether Webb was engaging in the unauthorized practice of law; the question is whether Fillipitch's belief that Webb *may* have been engaging in such conduct was objectively reasonable, in light of the facts known to her at the time of the reporting. *See Williams v. City of Chi.*, 733 F.3d 749, 759 (7th Cir. 2013) ("It is the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused.") (quoting *Sang Ken Kim v. City of Chi.*, 858 N.E.2d 569, 574 (Ill. App. Ct. 2006)). The undisputed facts unquestionably demonstrate the existence of probable cause.